NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROSCOE HOLLOWAY, | : |
|  | : Civil Action No.13-3378(NLH) |
| Plaintiff, | : |
|  | : |
| v. | : **OPINION** |
|  | : |
| LOUIS CAPPELLI, JR., et al., | : |
|  | : |
| Defendants. | : |

**APPEARANCES:**

Roscoe Holloway
Bayside State Prison
4293 Route 47
P.O. Box F-1
Leesburg, NJ  08327
    Plaintiff pro se

**HILLMAN,** District Judge

    Plaintiff Roscoe Holloway, formerly a pre-trial detainee confined at Camden County Correctional Facility in Camden New Jersey,[1] seeks to bring this action in forma pauperis pursuant to

---

[1] Plaintiff is now confined at Bayside State Prison in Leesburg, New Jersey.  According to the New Jersey Department of Corrections Inmate Locator, Plaintiff was sentenced on July 19, 2013, after the date of this Complaint.  See https://www6.state.nj.us/DOC_Inmate/details?x=1049656&n=0.

42 U.S.C. § 1983, alleging violations of his constitutional rights.[2]

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff asserts that, while he was confined as a pretrial

---

[2] This Court previously entered its Opinion and Order [3, 4] administratively terminating this matter based on Plaintiff's deficient application for leave to proceed in forma pauperis. Plaintiff has since submitted a complete application. Accordingly, based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's new Application [5] to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to re-open this matter and to file the Complaint.

detainee at the Camden County Correctional Facility, he was deprived of adequate access to the law library, to research his case. He also asserts that certain aspects of the services provided by the law library were inadequate, in that the employees were not knowledgeable and that the library failed to provide paralegals to represent prisoners in disciplinary proceedings.

Plaintiff also contends that he was subject to unsanitary conditions of confinement, including dirty cells and diluted cleaning solutions, confinement with prisoners who had not completed their medical clearance exams,[3] assignment to sleep on the floor in rodent-infested cells,[4] rusty and moldy windows, and moldy showers.[5]

Plaintiff names as Defendants Warden Eric M. Taylor, and Camden County Freeholders Louis Cappelli, Jr., Ian K. Leonard, Jeffrey L. Nash, Carmen Rodriguez, and Scott McCray, (collectively, the "Freeholders"), who Plaintiff contends

---

[3] Plaintiff explains that he was confined with such uncleared prisoners for as much as seven days and that he objected to such confinement because those prisoners might have exposed him to a contagious disease. Plaintiff does not allege that he ever contracted a contagious disease as a result of such confinement.

[4] Plaintiff does not allege that was ever bitten or otherwise disturbed by any rodents.

[5] Plaintiff does not allege that he or any other prisoner ever suffered any health problems attributable to mold.

allowed funding for the jail to be misused.  Plaintiff seeks monetary damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... .  Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678 (citations omitted).

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true, see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), <u>cited in</u> <u>Thomaston v. Meyer</u>, 519 F.App'x 118, 120 n.2 (3d Cir. 2013); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

IV. ANALYSIS

A. The Access to Courts Claim

Plaintiff alleges in general terms that he has been deprived of adequate access to the law library. Plaintiff also alleges that the personnel in the law library are inadequate and that the law library fails to provide a paralegal representative during disciplinary proceedings.[6]

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983), cited in Woodford v. Ngo, 548 U.S. 81, 122 (2006). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Bermudez v. Essex County D.O.C., Civil No. 12-6035, 2013 WL 1405263, *6 n.7 (D.N.J. Apr. 4, 2013)

---

[6] Notably, Plaintiff does not state whether he was ever the subject of a disciplinary proceeding for which he requested the services of a paralegal. In any event, the due process rights of a prisoner subjected to a disciplinary proceeding are distinct from the constitutional rights of a prisoner seeking access to courts. Cf., e.g., Stevenson v. Carroll, 495 F.3d 62, 70-71 (3d Cir. 2007) (describing the procedural due process rights of a pre-trial detainee subjected to a disciplinary proceeding).

7

(citing Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)); Paladino v. Newsome, Civil No. 12-2021, 2012 WL 3315571, *10 (D.N.J. Aug. 13, 2012) (same).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  See generally Diaz v. Holder, No. 13-1869, 2013 WL 3822412 (3d Cir. July 25, 2013) (discussing Bounds and Lewis).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

8

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Here, Plaintiff has not alleged any actual injury. He does not describe the type of case he wished to work on. To the

9

extent he desired access to the law library to conduct research regarding the criminal charges pending against him, he does not state whether he was represented by counsel in those proceedings. Moreover, it is clear that he is not entitled to general paralegal assistance. This claim will be dismissed without prejudice for failure to state a claim.

B.   The Conditions-of-Confinement Claims

Plaintiff alleges that he is housed in unsanitary conditions, including being housed for seven days with other inmates whose medical clearance exams had not been concluded, sleeping on the floor despite an infestation of rodents, dirty cells with windows having rust damage and mold, mold in the showers. In addition, Plaintiff contends that his life was placed in danger by his being housed with federal inmates.

Criminal pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee has been deprived of liberty without due process, is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42. Thus, the Bell standard controls evaluation of a claim that conditions of pre-trial confinement amount to punishment of the detainees,

prohibited prior to an adjudication of guilt.

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).

The government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institutions interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540.  In assessing whether challenged conditions are rationally related to legitimate penological purposes, courts must further enquire as to whether the conditions "'cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" Hubbard, 399 F.3d at 159-60 (citations omitted).

In other words, [u]nconstitutional punishment typically includes both object and subjective components.  Stevenson v.

Carroll, 495 F.3d 62, 68 (3d Cir. 2007).

> [T]he objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  [Wilson v. Seiter, 501 U.S. 294, 298 (1991).]  The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F.3d at 68 (citing Bell, 441 U.S. at 538-39 & n.20).

Here, Plaintiff's general allegations are insufficient to satisfy either the objective or subjective component.  Plaintiff fails to allege facts showing that he was subjected to genuine privation and hardship over an extended period of time.  Cf. Hubbard, 538 F.3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate due process because inmates "were not subjected to genuine privations and hardship over an extended period of time").  In addition, Plaintiff has failed to allege facts showing that the Warden or the Freeholders were aware of, and disregarded, a substantial risk to Plaintiff's health and safety.  See Farmer v. Brennan, 511 U.S. 825, 829, 844 (1994).  Cf. Chavis v. Fairman, 51 F.3d 275, *4 (7th Cir. 1995) ("Courts have routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and

12

that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation.") (citations omitted)); Lynch v. Sheahan, Civ. No. 92-1087, 1992 WL 245599 (N.D. Ill. Sept. 11, 1992) (holding that, absent showing that sleeping conditions were result of punitive intent, rather than overcrowding, fact that rats and roaches crawled over plaintiff while sleeping on a mattress on the floor of the Cook County Jail was insufficient to survive summary judgment motion).

In addition, Plaintiff's claims against the Freeholders appear to be based wholly on an untenable theory of vicarious liability. Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be

13

shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Mulholland v. Government County of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (citations and internal quotation marks omitted). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County,

14

Oklahoma v. Brown, 520 U.S. 397, 404 (1997).

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has alleged no facts suggesting that the challenged conditions of confinement were the result of an established policy or custom on the part of any of the Freeholders. For all the foregoing reasons, Plaintiff's conditions-of-confinement claim will be dismissed without prejudice.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim. However, because it is

15

conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies described above, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[7]

    An appropriate order follows.


At Camden, New Jersey                       s/Noel L. Hillman
                                                  Noel L. Hillman
                                                  United States District Judge

Dated:  June 24, 2014

---

[7] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.